Good morning honors. As you may already know, my name is Elisa Lipsky. I work with my friend Goldstein-Faustin in Prevec, representing Biomedino LLC, the appellant to this proceeding. What we'll be discussing today is a very narrow issue. This is an appeal from defining X, and the term means is a means plus function term without proper disclosure of structure and specification. Plaintiff argues that control means is not necessarily a means plus function term, or alternatively, it is found to be a means plus function term. There is ample structure in the structure. It does say means, however that is a rebuttable presumption. Certainly it is, except where is the structure inherent in the term control means that might take it outside of a means plus function term? We argue that simply the word control would enable one's skills in the art to discern the scope of the claims. But doesn't a person of ordinary skill in the art need to know what control you intend to use? Whatever the specification, is there any indication of control factors? There is figure six. Figure six doesn't show much except a box with the control lines going all the way up. And there is also column 11, lines 56 through 59, stating the entire process of regenerating the antibody may be controlled automatically by their own different equipment. What kind of equipment would that be? As Waters' own expert testified, the kind of equipment could be pneumatic, hydraulic, mechanical, electrical means of actuation. Would it be chemical too? I'm not one skills in the art, but I believe it could be. Well, how is someone supposed to decipher which one to use and how to use it in all five valves? If there are five valves and they could be controlled, would they be controlled simultaneously, sequentially, or otherwise? I believe that one skills in the art would be able to determine which control equipment would be best used for their own application. There's a bunch of giant leaves in here. You can make it out of leaves. Big, big, giant. Well, there's also, to exhibit what one of skills in the art would know, there are also some patents that were cited on the face of the 502 patent, including the kitchen and Was those cited by the Patent Office? Yes. You didn't cite them as references. You didn't incorporate them into the specification. You used controlled systems as shown in these particular patents. That would be a way to do it, Your Honor. But that's not what happened. That is not exactly what happened. However, these references, since they were considered in the prosecution history of the overall thing that I believe a person with skills in the art would know and would reference when considering the scope of the claims of the patent. But is it incumbent upon the applicant to really establish what the function and the means are so that they can support the structure? I agree that this is not a perfectly drafted claim. However, I do think that one with skills in the art would understand what was meant. As Your Honors have noted, there is an interplay between these two arguments. Everything we'll be talking about comes down to one's skills in the art. One's skills in the art would understand what control means is as to the scope of the claims unless it is not a means. It's just controlling the valves, right? Yes. Opening and closing to allow fluids to pass. Yes. One's skills in the art would certainly understand if this is found to be a means dysfunction term. After complete reading the specification, what is known by control means for automatically regenerating from both figure six, which shows a box labeled control connected to the specific valves necessary for automatic regeneration, and control equipment as found in column 11, example 12. Close questions of definiteness in litigation involving issue patents are probably resolved in favor of the patentee. The definiteness requirement does not compel absolute clarity. Did you look at all of the Imre Gossel case? In Imre Gossel, the court was dealing with a term called reconstruction means that had no particular structure, but the court found even though no structure was cited in the case, it's clear that one of skill in the art would understand you use computers for this purpose, and the court has held it is not indefinite. It sounds to me like it's close to right on the money with this case. I would agree with that assessment. This court has stated, by finding claims indefinite only if reasonable efforts at clean construction provide futile, we in court respect statutory presumption of patent validity, and we protect the inventive contribution of patentees even when, as in this case perhaps, the drafting of their patents has been less than ideal. If the term control means is found to be a meansless function term, if the claims we read in light of the specification reasonably applies to the skill in the art- Why wouldn't you have amended your claims? I noticed you filed in 1991. That's well in advance of the Imre Donaldson case, and I thought you didn't need to have as much structure cited in the specification. But after Imre Donaldson, why wouldn't you have amended your claims? Just drop out the means. I'm not a controller. As Your Honor may have noted, this patent did go through a very lengthy prosecution history, and in fact, the appeals process, and the appeal court asked the examiner specifically to go back and look at 112, section 2, and see what was indefinite. However, applicants' amendment and urging- this is a quote from the examiner- applicants' amendment and urging have overcome all bases of rejection previously stated under 35 U.S.C. 112, second paragraph. So I believe that the applicant believed that they did not need to amend simply because the patent office didn't require it, and they also believed that a person of skill in the art would understand what was meant. A challenge to a claim containing a means-plus-function limitation as lacking structural support requires a finding by clear and convincing evidence that the specification lacks disclosure sufficient to be understood by one skilled in the art as being adequate to perform the skill- excuse me, the recited function. As I stated earlier, figure 6 of 502 patent shows the box labeled control and lines connecting that control to each of the valves necessary for the performed function. Example 12 of the specification states, after a lengthy description of the process required for the regeneration of all new valves, the entire process may be controlled by three different types of equipment- differential pressure, valving, and control equipment. I believe control equipment would be understood by one skilled in the art as to what it discloses. Further, knowledge of one's skills in the art can be called upon to flesh out a particular structural reference in the specification for the purpose of satisfying the statutory requirement of definiteness. This is why Dr. Hage's testimony is so compelling. It is not the patentee putting on expert testimony trying to supplement. It is the defendant's own witness showing what one's skills in the art would understand control equipment to be. I believe that's about the time I have remaining to have any questions. Thank you, Ms. Dixie. I'll reserve the rest of your ballot time. Thank you. Mr. Kagan. Good morning, Your Honors. This is just a valve controller. Someone of skill in the art certainly knows how to control fluids. Right. Your Honor, the control mean, the phrase in question here is control means for automatically operating valves to carry out a regeneration process. If you are far less complex in your technology in the Dossal case. The Dossal case wasn't dealing with moving fluids. It was actually transmitting and receiving and analyzing data, significant amount of data for the regeneration means in NRE Dossal. The court says, although we can't understand why the written description does not state a computer or some equivalent phrase, nonetheless, one of skill in the art would certainly understand it was intended. Why doesn't Dossal control this case? Well, a couple of reasons, Your Honor. First of all, the. Far more complex technology, far less disclosure, and we found no 112-2 problem. And I don't recall the record. I've read Dossal. It's not. It's either. I don't think I have it here. It's binding on this panel, on this court. I understand that. The technology in Dossal, it was not clear that what we were talking about was just an open-ended set of options. What you have here, if you have a phrase in the claim, control means for automatically operating the valves. The expert for the plaintiff was unable to identify anything other than figure six. The expert for one of the defendants was asked not what that phrase implies from the specification, but what were the possible ways in 1972 of carrying out that function. And he gave a laundry list of four different kinds of operation of valves you might have used. Pneumatic, electrical, hydraulic, mechanical. He then said, plus you would need to control them. And there were other ways. There were several ways of controlling them. You could either use a timer to cause the valves to come on and off, or you could measure system parameters such as salinity or acidity or temperature. If you were going to measure system parameters, there's no description in the specification as to what parameters need to be specified. The specification talks about known control equipment in column 11. Obviously, one skill in the art knew what that meant. And the patent office looked specifically at this question and found no 112 problem. The tradeoff, this case is controlled entirely. Why if the patent office understands it, don't you? Again, Your Honor, I don't know what the record was for what persons of ordinary skill in Ray Dossal's case may have been, but I know what the record is here. And here you have three experts, all of whom say, I don't know what the term control means implies. You're all hypothesizing as to what it implies. You're all saying maybe this, maybe that. Only one. I'm sorry, Your Honor. Is that sufficient to really establish that a control means is under the circumstances? Under the statute, I submit to you, it does not. The statutory scheme of Section 112.6 came into being for the very purpose of dealing with this open-ended kind of question. 112.6 was enacted in response to the Halliburton case. And in Halliburton, there was a means plus a function claim and an effort to apply that claim to structure that had not been disclosed in the specification. And the Supreme Court said, not fair. At the point of knowledge. At the point of knowledge. Yes, sir. That was the whole problem in the Halliburton case. It probably could have been resolved without any further reference. But we now have the 112.6 paragraph. I understand that. But still the question is, those experts, they know how to control vows. They list several different ways, all of which they seem very familiar with. And they can do it. They just say, we're not sure which one was intended. Well, they intended the known vow control equipment. That's what they said in Column 11. Which your experts agree, they knew it too. Why isn't that enough for this Court, particularly in my memory, to gossip? Your Honor, there is a fundamental difference. And you find it articulated most clearly in the case on which the plaintiffs here rely. There's a fundamental difference between enablement under paragraph one and the structural requirement to define the scope of the claim. We're talking here about what defines the scope of the claim. And in the Atmel case, we rely on it by the plaintiffs. The Court goes into some length. Enablement is open-ended. Yes, if experts can say, I know how to do that, that then becomes a test for whether the statute is compliant with it. But we're talking under 112.6 about what is the outer reach of the claim. The question that's positive here is if you can use mechanical controls, electrical controls, multiple kinds of controls, and if you can use feedback or timers or any other kind of technology for handling the opening and closing of those vows at the appropriate time. If you can do that, you have a claim of virtually unlimited scope. The quid pro quo that this Court talks about under section 112. Why would you say unlimited scope? It's just a claim that would be limited to known ways of controlling vows, which were listed by your witnesses without difficulty at all. Why is it of unknown dimension? Your Honor, the term known, I suspect it was suggested to the Court, poses a rhetorical question. Known to whom? Known at what point in time? Known for what purpose? We're opening and closing vows. We're opening and closing vows for carrying out a fairly complex chemical process. If you can envision... The chemical process is in the rest of the claim, and it's quite a narrow claim with the recitation of the captains and so forth. Opening and closing vows. Opening and closing vows is absolutely comparable to my mind with dispensing debit cards, which this Court held in the default proof case, was not sufficiently well defined to satisfy the requirements of section 112, paragraph 2. Default proof is almost on all fours with this case. You have a black box in one of the figures that says dispense, and you have a means for dispensing cards. And there's actually even some recitation in the claim of some structure for holding cards, but it's not a complete recitation of structure  And the plaintiff made an effort there to link, as this Court's jurisprudence requires, to link the dispensing with point-of-sale terminals. And they identified several commercially available point-of-sale terminals that were known to the experts but not described in the patent. And under 112.2, this Court held that patent did not satisfy the specificity requirements. I suggest to you, it would be very difficult here to differentiate this case from the default proof case. And the N. Ray Dossal case. The N. Ray Dossal case was a case from the patent office. It was a case, as I recall, in which the Court recognized that there was computer processing to be done, and that obviously the structure for carrying out computer processing would be a general-purpose computer. It was back in that line of cases that started off with, I think, Wasserman, in which the Court dealt with the extent of which what was going on inside of a computer was statutory subject matter. And I just don't see the relationship here with N. Ray Dossal, where we're talking here about a plain control means for automatically operating valves. If they had written the patent differently, if they said, and these valves can be operated mechanically using timers, we'd be in a different situation here. So far as the record in this case shows about it, this system has never been built. Which may be the answer to one of the questions that one of this panel put to Ms. Lewski, is why didn't they make some amendments? I don't know the answer to that, but I think it is germane that this patent has never led to a working device. Mr. Taylor, what about the argument that the references say that a patent has to show some control features to establish what those means of control are, control means would be? I'm familiar with the argument, and I'm familiar with the references, Your Honor. What this court held in the... Oh, it is. It's the default proof case. What this court held in the default proof case was that a prior art reference, even one referred to in the specification on the day it was filed, cannot be used to identify the structure corresponding to the functional language. And the reason for that is that it becomes, again, an open-ended question. It's like enablement versus 112.6. If all you're trying to do is know what people of ordinary skill could have built, then what's in the prior art record is appropriate. But when someone goes to pick up a United States patent under 112.6, the statutory language compels that they be able to read that patent and determine what it is that is covered by the scope of that claim. We're talking, again, about the claim scope. Well, what's wrong with putting in a patent reference for control means  If they had said that, then you would probably be much, much closer to the Atmel case on which they relied. Well, Atmel was not a patent reference. That was a publication. That was a publication, but it was a publication whose title was incorporated into the specification as words. The title of that publication was part of the written specification. Which Atmel said was insufficient. Which the defendant said was insufficient, and this court held to the contrary because, and this is a very important because, because an expert for the plaintiff offered undisputed testimony that a person of ordinary skill could pick up that reference, read it, and know precisely the structure that was set forth to test the outer limits of the claim against Section 112.6. That's a very different case from the one that you have here where the experts were not able to identify any structure that corresponds to that claim. No, Atmel said specifically that you could not incorporate or reference a particular publication which was insufficient. It was not a patent. It was a publication. It was a publication. That's correct, Your Honor. And he said you could not incorporate by reference to 112.6. If it was a patent, would that make any difference in your judgment? I don't know whether it would make any difference, but there is no patent or anything else incorporated by reference into this specification. I understand that, but hypothetically if that had said controlled systems such as used in patent X, Y, Z, would that make a difference? I don't think so, Your Honor. I read the jurisprudence of this court to say that one who picks up the United States patent where the plaintiff has availed himself of the flexibility and convenience of claiming an element of his invention in terms of the function, where a plaintiff has done that, the quid pro quo is that he will set forth in the specification itself the structure that will form the outer limits of the claim. And incorporation by reference simply becomes a much more open-ended issue. Some patents... I'm not sure we want these specifications if we force the patent applicant to do that, to just incorporate the entire patent. Just put it in the specification. I don't think you have to do that. The test here is not a harsh one, but there is a test. The patent owner doesn't have to describe in detail what constitutes the disclosed structure. He has to describe it, and the words come from the Atmel case that they rely on, and I'll read them. To meet the particularity requirement... We can read those later in the presentation. Final comments? The important point here, Your Honor, is that the patent must permit... I think you've said that. Thank you, Your Honor. I'd like to address a couple of things by the defendants. First of all, simply because there are many ways to control the balance, as you say, it's not a very complicated technology, does not mean that one's skills in the art will be confused by all of these choices and not know how to control the balance. Second of all, this case is unlike default proof. In default proof, there is no structure disclosed. The entire specification... In fact, let me read you a quote from default proof. Because there's no suggestion anywhere in the patent or anywhere else that any of these structures identified by Gaffer can even dispense debit cards, the 182 patent cannot possibly link such structures to dispensing fees. That sounds a lot different from this case, doesn't it? It is, Your Honor. There's no question that even the experts in this case recognize that there are structures that could control balance. Correct. They identified it, didn't they? Which didn't happen in default proof, right? Yes, Your Honor. I'd also like to point out, default proof, the entire specification, consisted of two figures and three columns of text. It is not like this case, where there is a very rigorous and extensive prosecution history in which the patent office considered these issues. Also, I don't think that what is known to the art is a rhetorical question. Well, I'm sorry. What is known is a rhetorical question. What is known is what is known to one of skill in the art at the time of filing. And as we have shown from the structure disclosed in the specification, as well as the prior art references, is that one of skill in the art at the time of filing would indeed understand the scope of the claims. And thus, they are not indefinite. They could have enabled the claims. Is that the same thing as disclosing the structure? No, it is not, Your Honor. Why isn't that statutorily effective? I believe it all boils down to whether or not one of skill in the art would understand the scope of the claims under both analyses. And I think that one of skill in the art would understand the scope of the claims in response to either argument. I would also like to point out that this is not a case where the patentee's expert is being relied on to flesh out the specification. Rather, all we are relying on the expert testimony to do is show what was known to one of skill in the art, as we believe that there was structure disclosed in 502, in both Figure 6 and Example 12, Column 11. We agree that Ingray Dossal controls this case. And going back to something we had discussed before, Claim 36 of the patent actually does say, use the term, control. That helps us because... Well, I believe it goes back to what one of skill in the art and the patent office would understand what one of skill in the art would know. They would understand what a control is, or they would understand what a control means, or, as disclosed in the specification, what control equipment means. We are not... But your expert, Dr. Cady, essentially was trying to establish that there were available controls at that particular time, before 1972, prior to filing the application. However, was he selecting the specific terms, or was he just trying to flesh out the application itself? No, I believe that the structure disclosed was, a legal question, was the control equipment. And so the expert testimony goes to what can be understood by the phrase, known equipment. Well, the language doesn't say control equipment. It says, the entire process of regenerating the antibody may be controlled automatically by non-differential pressure valve control equipment. Now, what he was trying to do in his testimony was show by a monolith that there were available. But was he really hypothesizing as to what was available at that particular time, and trying to flesh it out so that it would be supported by the language of the claim? In other words, he was trying to add to the language of the claim. I don't believe he was trying to add to the language of the claim, no. Merely explain what one of skill in the art would know at the time. And this is not the point of novelty of this patent. Any final comments? I do not have this. Thank you very much.